UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. OLIVER W. WANGER, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-CR-271-OWW |
| | ) | No. 09-CR-25-AWI |
| vs. | ) | |
| | ) | HEARING RE SENTENCING |
| JEFFREY ALAN BROHN, | ) | |
| | ) | |
| Defendant. | ) | |

Fresno, California                    Monday, March 1, 2010

REPORTER'S TRANSCRIPT OF PROCEEDINGS

KAREN HOOVEN, RMR-CRR
Official Court Reporter
CSR No. 5816

APPEARANCES OF COUNSEL:

For the Plaintiff:        United States Attorney's Office
                          BY: **DAVID GAPPA**
                          2500 Tulare Street
                          Suite 4401
                          Fresno, California 93721


For the Defendant:        **BARBARA H. O'NEILL**
                          Attorney at Law
                          2014 Tulare Street
                          Suite 510
                          Fresno, California 93721

| | |
|---|---|
| 1 | Monday, March 1, 2010                                    Fresno, California |
| 2 | 9:25 a.m. |
| 3 |     THE CLERK:  The Court calls item number one. |
| 4 | 1:08-CR-271 and 1:09-CR-25.  United States of America versus |
| 5 | Jeffrey Alan Brohn.  Sentencing. |
| 6 |     MR. GAPPA:  Good morning, Your Honor, David Gappa for |
| 7 | the United States. |
| 8 |     MS. O'NEILL:  Good morning, Your Honor, Barbara |
| 9 | O'Neill for Mr. Brohn.  He is present in court in custody. |
| 10 |     THE COURT:  This the time set for sentencing.  Are |
| 11 | the parties ready to proceed? |
| 12 |     MS. O'NEILL:  Yes, Your Honor. |
| 13 |     MR. GAPPA:  Yes, Your Honor. |
| 14 |     THE COURT:  Mr. Brohn, have you read the Advisory |
| 15 | Guideline Presentence Investigation Report that recommends |
| 16 | your sentence? |
| 17 |     THE DEFENDANT:  Yes, I have. |
| 18 |     THE COURT:  Your attorney has filed formal |
| 19 | objections.  To that, the probation officer has responded. |
| 20 |     There, I believe, is a letter that was written by |
| 21 | you, but I have interpreted that as pertaining to the other |
| 22 | proceedings, which we concluded last week.  So those are the |
| 23 | materials that the Court has received. |
| 24 |     Have you had the opportunity to discuss the |
| 25 | recommendation for your sentence and the presentence |

1   investigation report with your attorney?
2          THE DEFENDANT:  Yes, I have.
3          THE COURT:  And do you understand the sentence that's
4   recommended?
5          THE DEFENDANT:  No, I do not.
6          THE COURT:  Is that because you believe that the
7   recommended sentence does not follow the plea agreement or for
8   some other reason?
9          THE DEFENDANT:  I believe that it does not follow the
10  plea agreement as well as the stated reasons for our last
11  hearing.
12         THE COURT:  All right.  Thank you.  You have read the
13  probation officer's recommendation for your sentence.  Is that
14  correct?
15         THE DEFENDANT:  Yes.
16         THE COURT:  All right.  And have you discussed the
17  difference of what you believe the sentence should be as
18  opposed to what is recommended with Ms. O'Neill, your
19  attorney?
20         THE DEFENDANT:  Yes.
21         THE COURT:  All right.  The procedure that we're
22  going to follow in sentencing is I'm going to first listen to
23  Ms. O'Neill.  She will state her views concerning the correct
24  sentence in your case.  Then Mr. Gappa will give us the
25  government's position.  After that, if you wish to say

1  anything, I will listen to whatever you have to say.
2          Do you understand how we're going to proceed to
3  sentencing?
4          THE DEFENDANT:  Yes, I do, Your Honor.
5          THE COURT:  Thank you.  Ms. O'Neill.
6          MS. O'NEILL:  Thank you, Your Honor.  I have spoken
7  with my client in depth about this.  He has corrections he'd
8  like me to bring to the Court's attention as to the sentencing
9  report.
10         He also feels that under Rule 11(b)(1)(A) and
11 (b)(1)(B), that he wasn't advised correctly by the Court and
12 wanted motions filed on that.
13         I did review the change of plea transcript from March
14 27th of '09 and I did inform Mr. Brohn that I would not be
15 filing a motion under Rule 11 to withdraw his plea.  I did
16 advise him that was a legal decision on my part as how I
17 interpreted the plea.
18         He then -- we then went through the whole presentence
19 report.  And I'd like to cite for the Court the areas that Mr.
20 Brohn finds are not correct.
21         He feels that the Sentencing Guideline Manual
22 from '08 should not have been used.  He didn't agree to that.
23 That the one from '05 should have been used.  He felt it was
24 more favorable.  And therefore, he feels that the offense
25 level should be 23 and the time 57 to 71 months, not 26 and

1  the 96 months minus the time in Tulare as the presentence
2  report indicates.
3           He feels that supervised release should be five
4  years, not ten.  He feels it's inconsistent as stated in the
5  presentencing report.
6           He disputes that he should not be allowed to have a
7  computer on page 2-A as one of the restrictions on supervised
8  release as there was no computer involved in the direct
9  charges he pled to.
10          He also feels that when it is termed concurrent, that
11 his sentence should not be 96 months, it should be 68 plus 28
12 concurrent for a total of 68 months, not 98 months.
13          Further -- and I believe he might be correct on
14 number 5, page 6, I believe he should get three points off in
15 the '08 case and two off in the '09 case because the '09 case
16 is less than the 16 level.  I believe that that should be
17 corrected.
18          He also disputes in number 20 where he says that
19 where it states that he was openly homosexual as a child.  He
20 says that's totally not true, that that was something he hid
21 from everyone when he was a child.
22          Further, he disputes any summary or statement in the
23 report that says he enticed the victim to travel.  He says
24 this doesn't say anything anywhere in any of the reports as
25 this stated.

1         He has many objections to the priors.  There are some
2    priors that state they're non-criminal and they have been
3    listed, even though they didn't give points for some of them.
4    He feels that that should not have been listed on the report
5    since it was not criminal.
6         Furthermore, on number 58, where it said that he was
7    required to register in that case.  There was no registration
8    required.  He feels that that is an error.
9         So the total criminal history points, in his opinion,
10   should be five or six.  And so that would be category three.
11   He wants to know why dismissed charges are listed since they
12   are dismissed.
13        He was never diagnosed with character illogical
14   disorder and he doesn't know what this is.
15        A lot of these things crossover all through the
16   report.  I haven't pointed out every where they're listed.
17        I did explain to my client that I felt since he made
18   a plea agreement for 96 months and could not argue for less
19   than that, that a lot of these issues were really not that
20   important.
21        He feels it's very important for the report to be
22   correct.  And that is why he asked me to bring these issues
23   up, Your Honor.
24        And he also would like to speak.
25        THE COURT:  All right.  Thank you very much, Ms.

1 O'Neill.

2 Now, the objections that you have just stated were or
3 were not submitted through the process that we have, by
4 starting with the informal objections and then formalizing
5 those to make them, if you will, written so that the probation
6 officer and the government can respond?

7 MS. O'NEILL: That's correct. I didn't represent Mr.
8 Brohn during that period of time. As the Court may realize, I
9 was appointed after he wanted to withdraw his plea, after that
10 process was finished. And then two weeks ago we had the
11 hearing on the motion to withdraw the plea.

12 THE COURT: All right. That obviously brings in to
13 question whether or not the government and the probation
14 officer are prepared to respond to these objections. Some of
15 them can be facially responded to. Others, where there may be
16 research involved, may not be so easily addressed. And so let
17 me now ask Mr. Gappa what his response is.

18 MR. GAPPA: Thank you, Your Honor.

19 He, as I understand it, did not raise most, if not
20 all of these objections. However, listening to them for the
21 first time this morning, I can respond. And I don't think
22 that it would prevent the Court from going forward with the
23 sentencing. Because most of these either are not accurate or
24 they shouldn't have any impact given the plea agreement that
25 was reached.

1    And as the Court analyzed it accurately, in rejecting
2 the motion to withdraw from the plea agreement, he stipulated
3 to a specific sentence. And whether or not the '05 or the '08
4 manual is used is really not that big of a factor because he
5 agreed to what a specific reasonable sentence would be.
6    But I do have, if the Court wants it now or if you
7 want me to wait, some points in response to most of his issues
8 that he's raised today.
9    THE COURT: All right. If you're prepared to
10 proceed, we can do that. And I can, if there are any issues,
11 advise the parties at the time when we get there. Depending
12 upon what the response to each of these is.
13    MR. GAPPA: Yes. That would be the government's
14 preference, Your Honor.
15    THE COURT: All right. Well then let's now proceed
16 to hear from the government.
17    MR. GAPPA: Your Honor, in terms of whether or not
18 it's the '05 or the '08 guideline manual, I believe the
19 probation office correctly selected the '08 manual, and for
20 the reasons stated. That it doesn't really affect the offense
21 level and it's not creating any ex post facto issue.
22    But at least, if not more importantly, he agreed to a
23 specific sentence of imprisonment of 96 months with the
24 possible reduction for any credit that he could prove he was
25 entitled to for having served a sentence in Tulare County. So

1  that is not something that should detain the Court long on
2  that issue.
3       The supervised release term, that was one component
4  of the sentence that was not agreed to.  Probation recommends
5  ten years.  The minimum term is five years.
6       The government believes that a lifetime term would be
7  appropriate given his prior record where there are numerous
8  minor offenses.  But then even after having been required to
9  register as a sex offender for the 1997 conviction, he failed
10 to register not just in California, but also in Michigan, was
11 convicted for that and has an outstanding warrant for failure
12 to register in Wisconsin.  And committed a serious offense in
13 California.
14      And given the history of what appears to be an
15 attitude that he's displayed with the criminal justice system,
16 it would seem that an appropriate sentence for supervised
17 release would be lifetime.
18      On the issue of his access to a computer.  It is not
19 true that he didn't use a computer in the commission of the
20 offense.  In fact, he agreed that there were electronic
21 messages, there were text messages and email messages and use
22 of a computer to communicate with the minor victim in Tulare
23 County.
24      And so the government believes that restriction on
25 his computer access is reasonably related to promotion of

1  public safety and believes that that condition of supervised
2  release should be added to his sentence.
3          The math that the defendant uses to calculate a
4  sentence of what he believes should be 68 months is something
5  that the Court has already rejected.  As the Court viewed it,
6  nothing could have been more plain than the 96-month term that
7  he agreed to.
8          And the reason he doesn't, in the plea agreement, get
9  three levels off for acceptance is he pled so late in the
10 process.  It was the Friday before a trial scheduled to begin
11 on Tuesday.  And the plea agreement specifically referenced
12 two level reduction if he qualified for acceptance.  So that
13 is why there's no reference to a three level reduction.
14         In terms of his history of whether or not he was
15 openly homosexual, the government has no insight into that and
16 does not object if the Court wants to amend that reference.
17         There is no indication that he did entice the victim
18 to travel.  However, that wasn't the charge.  It was that the
19 defendant traveled to the victim.
20         And in terms of the history of his priors, the
21 government had evidence, which it gave to the probation
22 office, which it believes is the basis for all of those
23 entries on his history of offenses and contacts with the
24 criminal justice system and believes that that is accurate.
25 So those should remain in the report.

1 And as mentioned, it is not accurate, as he
2 suggested, he was not required to register as a result of the
3 1997 conviction in New Jersey. It's the government's
4 understanding that he was required to register for a period of
5 25 years.
6 And again, whether or not he has five or six criminal
7 history points really doesn't matter. The government believes
8 that the probation summary and calculation is accurate; but
9 even if it weren't, the defendant agreed that a 96 month term
10 of imprisonment would be reasonable.
11 And it appears that the probation office calculated
12 his credits on the Tulare County case to be roughly eight
13 months. So the government does not object if the Court wants
14 to adjust the 96 month sentence by eight months for the
15 sentence that he's already served to make a net sentence of 88
16 months. That would seem to be appropriate. But would ask the
17 Court to impose a lifetime term of supervised release.
18 THE COURT: All right. Thank you very much, Mr.
19 Gappa.
20 Ms. O'Neill, anything further?
21 MS. O'NEILL: Just that my client indicates there's
22 no warrant in Wisconsin. And he had information on that, he
23 indicates. And that he was not ordered to register in
24 Michigan. It was it in New Jersey. It was Michigan -- -- it
25 was after he moved to New Jersey from Michigan, that's when

1 that happened.

2 THE COURT: All right. He was not required to
3 register in New Jersey, rather it was in Michigan?

4 THE DEFENDANT: Correct. In moving -- the case was a
5 New Jersey case. The judge ordered that there was no
6 registration. But under Michigan law, there was a
7 registration requirement. And in Wisconsin as well, there was
8 a registration requirement. However, in New Jersey, the state
9 of the case, part of the case, there was no registration
10 involved. Or required.

11 THE COURT: All right. So there was no criminal
12 liability for that?

13 THE DEFENDANT: Correct.

14 THE COURT: Understood.

15 All right. Now, Mr. Brohn, if you would like to say
16 anything, this is your time.

17 THE DEFENDANT: First of all, thank you, Your Honor,
18 for listening. Thank you for most of your diligent work
19 through the case. I -- in addition to -- I did request that
20 my attorney file a formal objection with all these listed. I
21 know that Mr. Beevers, after the government suggested that
22 there is a conflict of interest, did not send any more to the
23 probation department. So I do not know if they ever got any
24 of these, if any of these were discussed.

25 However, I do know that my present counsel does not

1  even have a copy of the updated probation report.  I, in front
2  of me, have one dated May 21st with adjustments, she has May
3  11th with adjustments -- without the adjustments.  So I don't
4  know why it always seems that at every turn -- I know the
5  Court is very diligent on what happened over the 30 minutes of
6  the change of plea hearing.  But every time that other
7  paperwork gets moved or placed around, it really doesn't seem
8  to matter.
9             THE COURT:  All right.  Well, let me respond that it
10 obviously does matter.  And the probation officer's report and
11 recommendation and the response of the parties is equally
12 important.
13            And because the Court understands and believes that
14 you have a right to make objections and to have your present
15 attorney be fully informed on sentencing matters, I'm going to
16 give her the opportunity to formalize these objections.
17            The theory and the analysis that has been done is
18 this.  It's not that it doesn't matter.  It is that the Court
19 has found that you made a knowing, voluntary, valid
20 enforceable plea bargain with the government and, therefore,
21 because that calls for a specific sentence, the details of
22 your sentencing process and the probation officer's report and
23 recommendation are ultimately not superseding nor do they
24 affect your bargain.
25            With that said, the Court can't predict the ultimate

1  outcome of any review of the case that addresses issues that
2  you wish to raise.  And so it's my preference to have a
3  complete and accurate record in this Court.
4              And so I'm going to afford Ms. O'Neill time to
5  formalize the objections that you're making.  And we'll have a
6  response from the probation officer and the government to
7  those.  And we will complete the sentencing once that's been
8  done.  Then everything that you wish to state and to have
9  documented in the record will be there.
10             THE DEFENDANT:  I understand.
11             THE COURT:  And so what time, Ms. O'Neill, do you
12 need?
13             MS. O'NEILL:  I would ask until March 19th to file
14 the objections.
15             THE COURT:  All right.  And then what's the probation
16 officer's estimate of time needed for response and the
17 government's?
18             PROBATION OFFICER:  Your Honor, I would request at
19 least two weeks.
20             THE COURT:  All right.  That's fair.  Mr. Gappa?
21             MR. GAPPA:  Your Honor, that would make it April 2nd.
22 I'm available on April 12th if the Court's available for
23 sentencing on that date.
24             MS. O'NEILL:  Yes.
25             THE COURT:  Yes.

1        All right. Then the 19th of March is the date by
2  which the defendant's formal objections in writing are due.
3  Then two weeks, Michelle?
4        THE CLERK: April 2nd.
5        THE COURT: April 2nd is the date for the probation
6  officer and the government's response. And if it's possible
7  for the probation officer to get her response a day or two
8  before that so the government can see it, that would be very
9  helpful.
10        We will then complete the sentencing on the 12th of
11  April at nine a.m. And the sentencing is now in progress, but
12  we will have these additional matters so that they can be
13  addressed by the parties and Mr. Brohn's record will be
14  preserved.
15        Anything else today?
16        MS. O'NEILL: No. Thank you.
17        MR. GAPPA: No, thank you, Your Honor.
18        THE COURT: All right. This matter is continued to
19  April the 12th at nine a.m.
20        MS. O'NEILL: My client is asking for a copy of -- he
21  said there was an original agreement that the court has that
22  has handwriting on it that's different than the one that was
23  filed. He has maintained that for a while. And I don't know
24  if anybody has possession of that. He's asking for us to get
25  a copy of that.

1         THE COURT: What I can say is that I have a
2    memorandum of plea agreement with a stamp, it's a probation
3    officer stamp, received March 30th of 2009. It's document 7
4    on the docket. It's filed March 30th, 2009. And this does
5    not appear to have extraneous writing on it.
6         MS. O'NEILL: And that's the one I have. My client
7    indicates that the one he signed did have handwritten items on
8    it. And I believe Mr. Gappa did say he changed something that
9    he said didn't affect anything.
10        THE COURT: All right. Well, if Mr. Gappa -- and I
11   will ask him -- has the original, because I do not. Plea
12   agreement.
13        MR. GAPPA: Your Honor, I think the only version that
14   I would have left is the version that has the original
15   signatures on it, which is the same thing that was filed.
16        THE COURT: I see. All right. Well, I don't have
17   anything I can produce because all that I have is the one
18   that's attached to the plea agreement.
19        And so I will ask that the courtroom deputy determine
20   whether or not there is a separate file. Sometimes, we used
21   to, before the advent of ECF and going paperless, we
22   maintained a file for each criminal case. We no longer do
23   that. And so -- but I will nonetheless have the courtroom
24   deputy look to see if there is any other duplicate original or
25   a prior version of the agreement.

1        MS. O'NEILL:  Thank you.
2        THE COURT:  You're welcome.
3        THE DEFENDANT:  Thank you, Your Honor.
4        (The proceedings were concluded at 9:25 a.m.)
5
6        I, KAREN HOOVEN, Official Reporter, do hereby certify
7   that the foregoing transcript as true and correct.
8
9   DATED:  11/07/2011                /s/  Karen Hooven
                                      KAREN HOOVEN, RMR-CRR